UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA YVONNE SCOTT,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>            Defendant. | Case No. CV 13-6149 JC<br><br>MEMORANDUM OPINION |

## I. SUMMARY

On August 26, 2013, plaintiff Sandra Yvonne Scott ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 28, 2013 Case Management Order ¶ 5.

///
///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 14, 2011 and March 21, 2011 plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, respectively. (Administrative Record ("AR") 11, 79). Plaintiff asserted that she became disabled on January 15, 2011, due to ligament damage in both knees, carpal tunnel syndrome, high blood pressure and obesity. (AR 85). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), and medical and vocational experts on January 18, 2013. (AR 214-42).

On March 5, 2013, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 11-23). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: osteoarthrosis of both knees with prior surgical repairs, chronic low back strain, hypertension, asthma, morbid obesity, uterine fibroid, and anemia (AR 14); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 15-16); (3) plaintiff retained the residual functional capacity to perform less than the full range of light work (20 C.F.R. §§ 404.1567(b), 416.967(b))[2] (AR 16); (4) plaintiff could not perform her past

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

[2] The ALJ determined that plaintiff: (i) could lift and carry up to 20 pounds occasionally, but had no frequent ability to lift and carry any amount of weight due to her leg limitations; (ii) could stand and walk two hours per day, and sit six hours per day; (iii) needed a sit/stand
(continued...)

relevant work (AR 21); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically charge account clerk, document preparer, and ticket checker (AR 21-22); and (6) plaintiff's allegations regarding her limitations were not credible.  (AR 17).

The Appeals Council denied plaintiff's application for review.  (AR 3).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

///
///

---

[2](...continued)
option where plaintiff could change positions at will between sitting, standing, and walking; (iv) had occasional ability for postural positioning and movement including bending, stooping, crouching, and climbing ramps and stairs; (v) could not use ladders, ropes or scaffolds; and (vi) needed to avoid exposure to concentrated fumes, dusts, and odors secondary to history of asthma.  (AR 16).

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B. Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more

///
///
///

weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ may reject the opinion of a treating physician in favor of another conflicting medical opinion if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the

---

[3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

6

[physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

### 2. Analysis

Plaintiff contends that the ALJ improperly rejected the opinions expressed by Dr. Kenton Johnson, plaintiff's treating physician at the Northeast Community Clinic, in a December 12, 2012 Physical Residual Functional Capacity Questionnaire – specifically, that plaintiff had significant functional limitations which essentially would prevent her from performing even sedentary work ("Dr. Johnson's Opinions"). (Plaintiff's Motion at 4-10) (citing AR 116-19). A remand or reversal is not warranted on this basis, however, because the ALJ properly rejected Dr. Johnson's Opinions for clear and convincing, specific and legitimate reasons supported by substantial evidence.

First, the ALJ properly rejected Dr. Johnson's Opinions as conclusory, inadequately supported by clinical findings, and inconsistent with and/or unsupported by the physician's own treatment notes. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); id. at 1216 (A discrepancy between a physician's notes and recorded observations and opinions and the physician's assessment of limitations is a clear and convincing reason for rejecting the opinion.); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). For example, although plaintiff initially presented with significant complaints of knee and wrist pain, and on examination Dr. Johnson noted that plaintiff had "tenderness" in her right wrist, and crepitus and other symptoms in her knee (AR 155-57), Dr.

Johnson's subsequent treatment notes reflect that plaintiff's condition was promptly addressed with medication. (AR 154 [plaintiff "reporting continued knee and wrist pain controlled by Tylenol #3"]; AR 149 [plaintiff's "pain [symptoms][4] responding to Tylenol #3 and Motrin"]). In addition, the only "clinical findings and objective signs" noted in Dr. Johnson's Opinions are that plaintiff was "morbidly obese and walk [sic] with a limp, [and] ha[d] tenderness, crepitations and palpable osteophytes in her knees." (AR 116). Dr. Johnson's treatment notes reference an x-ray of plaintiff's right knee which showed only "mild medial joint degenerative changes" with possible "underlying ligamentous instability, and an x-ray of plaintiff's left knee which showed "[a]dvanced degenerative joint disease." (AR 151, 160, 177). As the ALJ noted, however, contrary to Dr. Johnson's opinion that plaintiff continued to suffer from disabling symptoms, Dr. Johnson's subsequent treatment records reflect examination findings which, with only minor impairments, were generally within normal limits. (AR 20; see AR 133-34, 144-56). While plaintiff argues that such evidence adequately supports Dr. Johnson's Opinions (Plaintiff's Motion at 5-7), the Court will not second guess the ALJ's reasonable determination that it does not which, as noted above, is supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

    Second, the ALJ's decision suggests, in part, that Dr. Johnson apparently diagnosed and treated plaintiff based solely on plaintiff's pain complaints. (AR 20). To the extent Dr. Johnson's Opinions were based solely on such subjective complaints – which, as noted below, the ALJ properly discredited – the ALJ properly rejected Dr. Johnson's Opinions. See, e.g., Bayliss, 427 F.3d at 1217

---

[4] Although plaintiff suggests that this treatment notes reflects that she was not responding to medication (Plaintiff's Motion at 7), this Court, like defendant (Defendant's Motion at 4) reads such treatment note to reflect that plaintiff was responding to medication. (AR 149) ("Her pain is responding to tylenol #3 and Motrin.").

8

(ALJ properly rejected opinion of treating physician which was based solely on subjective complaints of claimant and information submitted by claimant's family and friends).

Third, the ALJ properly rejected Dr. Johnson's Opinions, in part, based on specific evidence that the unsupported opinions were provided "as an accommodation to [plaintiff] and [did] not reflect [plaintiff's] true physical capacities." (AR 20); cf., e.g., Saelee v. Chater, 94 F.3d 520, 522-23 (9th Cir. 1996) (ALJ properly rejected physician's report as "untrustworthy" where "it was obtained solely for the purposes of the administrative hearing, varied from [the physician's] own treatment notes, and was worded ambiguously in an apparent attempt to assist [claimant] in obtaining social security benefits."), cert. denied, 519 U.S. 1113 (1997); Nguyen v. Chater, 100 F.3d 1462, 1464-65 (9th Cir. 1996) (fact that medical opinion was obtained by attorney relevant only where the record lacks objective medical basis for the opinion and "there is evidence of 'actual improprieties' on the part of the doctor whose report the ALJ chooses to reject.").

Finally, the ALJ properly rejected Dr. Johnson's Opinions in favor of the conflicting opinions of the state-agency examining physician, Dr. Soheila Benrazavi (who essentially opined that plaintiff had greater functional abilities than those found by the ALJ) (AR 207), and the medical expert, Dr. Harvey Alpern (whose residual functional capacity assessment the ALJ mostly adopted) (compare AR 16 with AR 234, 237). The opinion of Dr. Benrazavi was supported by the physician's independent examination of plaintiff (AR 204-07), and thus, without more, constituted substantial evidence upon which the ALJ could properly rely to reject the treating physician's opinions. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Dr. Alpern's testimony also constituted substantial evidence supporting the ALJ's decision

since it was supported by the other medical evidence in the record as well as Dr. Benrazavi's opinions and underlying independent examination. See Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it").

Dr. Benrazavi did not, as plaintiff contends (Plaintiff's Motion at 8), rely solely on the same clinical findings used by Dr. Johnson. Cf., e.g., Orn, 495 F.3d at 632 ("When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "'substantial evidence.'"). Instead, as just noted, Dr. Benrazavi relied, in part, on independent clinical findings (*i.e.*, "findings based on objective medical tests that the treating physician has not [] considered"). Id. ("[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'") (citations omitted). Moreover, the record belies plaintiff's assertion that the "ALJ [] rejected . . . Dr. [] Benrazavi's opinion[s]. . . ." (Plaintiff's Motion at 4, 9). To the contrary, the decision reflects that the ALJ did not entirely reject, but instead merely discounted the weight given to Dr. Benrazavi's opinions to give plaintiff "some benefit of the doubt," in light of the greater weight the ALJ gave to the testifying medical expert, and to "resolv[e] [] inconsistencies" in the medical evidence. (AR 19-20). It was the sole province of the ALJ to resolve any conflict in this properly supported medical opinion evidence. Andrews, 53 F.3d at 1041.

Accordingly, plaintiff is not entitled to a remand or reversal on this basis.

### B. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). "To determine whether a claimant's testimony

regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find a claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the claimant's statements and testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling 96-7p. Although an ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his or her credibility assessment. Burch, 400 F.3d at 681.

///

1    Questions of credibility and resolutions of conflicts in the testimony are
2 functions solely of the Commissioner.  Greger, 464 F.3d at 972.  Accordingly, if
3 the ALJ's interpretation of the claimant's testimony is reasonable and is supported
4 by substantial evidence, it is not the court's role to "second-guess" it.  Rollins, 261
5 F.3d at 857.

6    **2.    Analysis**

7    Plaintiff contends that a reversal or remand is required because the ALJ
8 inadequately evaluated the credibility of her subjective complaints.  (Plaintiff's
9 Motion at 10-12).  The Court disagrees.

10   First, the ALJ properly discredited plaintiff's subjective complaints as
11 inconsistent with plaintiff's daily activities.  See Thomas, 278 F.3d at 958-59
12 (inconsistency between the claimant's testimony and the claimant's conduct
13 supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d
14 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and
15 actions cited as a clear and convincing reason for rejecting the claimant's
16 testimony).  For example, as the ALJ noted, contrary to her allegations of
17 disabling symptoms, plaintiff testified that her 3½ year old daughter and twin 6½
18 year old granddaughters live with plaintiff and her husband.  (AR 224, 228).
19 Plaintiff testified that her adult daughter helps plaintiff care for the grandchildren,
20 but, as the ALJ noted, the daughter does not live with plaintiff.[5]  (AR 17, 227-28).
21 Plaintiff testified that her husband is at home during the day and is the primary
22 caretaker for their daughter.  (AR 224).  Nonetheless, plaintiff also testified that
23 her husband is receiving disability benefits (AR 230-31) – which suggests, at a
24 minimum, that there are significant limitations in the amount of assistance the
25 husband could offer in caring for the three children who live with plaintiff.

---

[5]Plaintiff also testified that the grandchildren's mother "helps sometimes", but their father cannot because he is "paralyzed from the waist down [and] . . . in a wheelchair."  (AR 228).

Accordingly, the ALJ properly discounted the credibility of plaintiff's pain allegations as inconsistent with plaintiff's "[apparent ability] to care for her 3½-year old child and her twin 6 year old granddaughters at home, which can be quite demanding both physically and emotionally. . . ." (AR 17).

As plaintiff correctly notes (Plaintiff's Motion at 12), a claimant need not "vegetate in a dark room excluded from all forms of human and social activity" to be considered disabled. Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (citation omitted); see Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be 'utterly incapacitated' in order to be disabled.") (citation omitted). This does not mean, however, that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of conflicting subjective symptom testimony. See Reddick v. Chater, 157 F.3d 715, 723 (9th Cir. 1998) (inconsistency between claimant's level of daily activities and the claimant's alleged limitations may justify discounting claimant's credibility); see also Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted). Here, the ALJ properly discounted plaintiff's subjective symptom testimony to the extent plaintiff's daily activities were inconsistent with a "totally debilitating impairment." Molina, 674 F.3d at 1113; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair, 885 F.2d at 604).

Second, the ALJ properly discounted plaintiff's credibility based on plaintiff's general unexplained failure to seek treatment consistent with the alleged

severity of her subjective complaints.  See Bunnell, 947 F.2d at 346 (In assessing credibility, the ALJ may properly rely on plaintiff's unexplained failure to request treatment consistent with the alleged severity of her symptoms.); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (In assessing credibility, ALJ properly considered doctor's failure to prescribe and claimant's failure to request any serious medical treatment for supposedly excruciating pain); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (lack of treatment and reliance upon nonprescription pain medication "clear and convincing reasons for partially rejecting [claimant's] pain testimony").  For example, as the ALJ noted, contrary to plaintiff's allegations of disabling pain, plaintiff's healthcare providers have generally treated plaintiff with conservative methods including physical therapy and medication.  (AR 17, 132, 144-57); see, e.g., Fair, 885 F.2d at 604 (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained).  As the ALJ also noted, treatment notes reflect that plaintiff "responded well" to such conservative treatment.  (AR17; see AR 149 [plaintiff's "pain [symptoms] responding to Tylenol #3 and Motrin"]; AR 154 [plaintiff "reporting continued knee and wrist pain controlled by Tylenol #3"]); see Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (evidence that claimant "responded favorably to conservative treatment" undermines plaintiff's reports of disabling pain).  While plaintiff argues that the record (including one physician's recommendation that plaintiff receive knee surgery) does not generally reflect treatment that was conservative (Plaintiff's Motion at 5-7), the Court will not second guess the ALJ's reasonable determination to the contrary, even if the evidence could support inferences more favorable to plaintiff.  See Robbins, 466 F.3d at 882 (citation omitted).

With respect to plaintiff's asthma, the ALJ noted that the record does not show ongoing significant asthma treatment.  For example, plaintiff has not needed

hospitalization. The record reflects only a few visits to medical sources related to plaintiff's asthma, with no significant findings. (AR 123 ["some inspiratory and expiratory wheezing" in lungs; normal chest x-ray]; AR 144 ["mild" respiratory distress with "diffuse wheezing"]; AR 146 ["occasional wheezes" in lungs]). On May 29, 2012 plaintiff went to the Olympia Medical Center emergency room with complaints of chest pain, coughing and wheezing. (AR 122-27, 169-74). Plaintiff was diagnosed with "acute asthma exacerbat[ed] [by] viral illness," was given "a couple breathing treatments and steroid" (after which plaintiff "felt better" and her lungs were clear), and was discharged with renewed prescriptions for her asthma medicine. (AR 122-24). Plaintiff told doctors at Olympia Medical Center that she had not had an asthma attack in a while and had not needed to use her prescribed asthma inhalers for so long that they had expired and she threw them out. (AR 122). The ALJ was entitled to discount plaintiff's credibility due to plaintiff's unexplained failure to seek or follow treatment consistent with the alleged severity of her asthma. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Similarly, as the ALJ noted, only one progress note indicated that plaintiff's hypertension was "uncontrolled" – and that circumstance occurred when plaintiff "ran out of medication." (AR 17, 150). While an ALJ may not reject symptom testimony where a claimant provides "evidence of a good reason for not taking medication," Smolen, 80 F.3d at 1284 (citations omitted), plaintiff has failed to present such a sufficient reason.

As for plaintiff's history of anemia, as the ALJ noted, plaintiff has not required a blood transfusion. (AR 207). In addition, on July 28, 2011, an examining physician noted that plaintiff "[c]linically [] did not appear to be significantly anemic." (AR 207). Also, in a September 7, 2012 progress note, plaintiff's treating physician indicated that plaintiff's anemia had "improved." (AR 145).

///

At the hearing plaintiff testified that her medications made her "extremely drowsy" and "dizzy." (AR 227). Contrary to plaintiff's conclusory assertion that "the side effects of medications can have a significant impact on an individual's ability to work" (Plaintiff's Motion at 11-12), as the ALJ noted, the record does not reflect (and plaintiff points to no persuasive evidence to the contrary) that plaintiff complained to her treating physician about limitations from such side effects.[6] (AR 19, 144-57). The ALJ was permitted to discredit plaintiff's subjective complaints about limitations from medication side effects due to such inconsistencies. See, e.g., Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) ("In weighing a claimant's credibility, the ALJ may consider . . . inconsistencies . . . between [the claimant's] testimony and [her] conduct . . . .") (citations omitted). As plaintiff correctly notes, the medical expert did testify that the amount of pain medication plaintiff used was the primary cause of plaintiff's daily fatigue. (AR 236). However, the ALJ did not, as plaintiff suggests, "trivialize[]" plaintiff's testimony as to the limiting effects of her medication side effects. (Plaintiff's Motion at 11-12). At the hearing the medical expert specifically testified that he had accounted for any limitations related to plaintiff's medication side effects in the residual functional capacity assessment for plaintiff which, as noted above, the ALJ mostly adopted. (AR 16 234, 236, 237).

Finally, the ALJ properly discounted plaintiff's credibility in part because plaintiff's subjective symptom allegations were not fully corroborated by the objective medical evidence. See Rollins, 261 F.3d at 857 ("While subjective pain

---

[6]Although Dr. Johnson stated in the December 12, 2012 Physical Residual Functional Capacity Questionnaire that plaintiff was taking pain medication (*i.e.*, "Tylenol #3") which "is sedating," and other medication which "may also cause dizziness," Dr. Johnson did not, as plaintiff suggests (Plaintiff's Motion at 11), opine the plaintiff actually experienced such side effects to any significant degree. (AR 116-19).

16

testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). For example, as the ALJ noted, contrary to plaintiff's reported pain in her back, the examining physician found no evidence of tenderness to palpation in the midline or paraspinal areas, straight leg raise testing that was negative at 90 degrees bilaterally, and range of motion that was within normal limits. (AR 17) (citing AR 206). Contrary to plaintiff's allegations of disabling knee impairments, the examining physician found that, despite "osteoarthritic changes" in plaintiff's knees bilaterally, plaintiff's range of motion was only "mildly diminished with crepitus," and plaintiff was able to ambulate without needing an assistive device, and could perform a tandem gait and stand on her heels and toes. (AR 17) (citing AR 207). Moreover, as the ALJ noted and as discussed above, progress notes from plaintiff's treating physician reflect findings on physical examinations which, with minor exceptions, were generally within normal limits. (AR 18-19, 133-34, 144-56). While plaintiff contends that the ALJ's determination that plaintiff's subjective symptom testimony was not fully corroborated by the objective medical evidence "is both factually and legally defective" (Plaintiff's Motion at 11), the Court will not second guess the ALJ's implicit determination otherwise.

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 27, 2014

                                            /s/
                                Honorable Jacqueline Chooljian
                                UNITED STATES MAGISTRATE JUDGE